Harold X (SMITH)

v.

Lieutenant A. SMITH, et al.

Civ. A. No. 81–1919.

United States District Court,
E.D. Pennsylvania.

Feb. 3, 1984.

Harold X Smith, pro se.

Carl Vaccaro, Deputy Atty. Gen., Philadelphia, Pa., for defendants.

OPINION

LUONGO, Chief Judge.

This is a prisoner's § 1983 action alleging facts which may be construed as claims of deprivation of property without due process and violations of plaintiff's First Amendment rights of access to the courts and to practice his religion. In an earlier opinion, *Harold X (Smith) v. Lieutenant A. Smith*, 561 F.Supp. 416 (E.D.Pa.1983), I denied defendants' motion for summary judgment and allowed plaintiff the opportunity to amend his complaint to provide greater specificity and to file affidavits based on the affiant's personal knowledge.

Plaintiff filed his amended complaint and affidavits, following which defendant Marks renewed his motion for summary judgment. After considering plaintiff's most recent submissions, I will grant Marks' motion.

Because I find that plaintiff's submissions have cured most of the defects identified in my earlier opinion, it is necessary for me to address the legal issues raised in the original motion for summary judgment and reserved by that earlier opinion. Based on the following analysis, I will deny the summary judgment motions of defendants Smith, Heacock and Kohut.

Plaintiff's second amended complaint alleges that when defendant Marks became Commissioner of the Bureau of Corrections in mid-1980, he issued a memorandum requiring that all typewriters of prisoners involved in "the work stoppage" be destroyed and all their legal papers confiscated. Plaintiff had previously alleged that his property was destroyed pursuant to this policy. Docket No. 12. Plaintiff also submitted affidavits in support of these allegations. Inmate Joseph Baynes attested that he removed from Lieutenant Smith's wastebasket a memorandum from Commissioner Marks ordering the confiscation and/or destruction of all typewriters belonging to inmates involved in the May 8, 1980 work stoppage. Affiant Baynes also stated that he saw Lieutenant Smith throw plaintiff's typewriter onto the floor at Graterford. No dates have been given for these occurrences.

█ Although plaintiff has been less than precise about dates in all of his submissions, the following scenario can be pieced together from the information he and defendants have supplied. Plaintiff was transferred from Graterford on May 9, 1980. His property was shipped to him at some later date. While plaintiff's property was still as Graterford, Lieutenant Smith threw plaintiff's typewriter onto the floor. Plaintiff did not see his property again until the end of 1980. Defendant Kohut, in his answers to interrogatories, stated that plaintiff's typewriter was received at the State Correctional Institution at Pittsburgh (SCIP) on or about May 16, confirming the date by a copy of the Inmate Personal Property Inventory used in the transfer of plaintiff's property. If this date is accurate, Lieutenant Smith must have thrown the typewriter before May 16. He could not have committed that act pursuant to Marks' instruction, as plaintiff has alleged, because Marks did not become Commissioner until June 12, a fact which is uncontroverted.

Plaintiff has not directly controverted defendant's assertion that plaintiff's property was received in Pittsburgh by May 16. Based on his statement that he never saw his property at Pittsburgh, he may be unable to do so. While I am aware of the difficulties plaintiff faces as a *pro se* litigant and as an inmate in determining the facts, I can't ignore that the timing issue raises grave doubts that events could have transpired as plaintiff has alleged. There is another glaring inconsistency in plaintiff's submissions. In his first amended complaint, plaintiff alleges:

d—As soon as defendant Marks took control of the Bureau of Corrections he ordered that the Plaintiff typewriter be destroyed and that his most value legal files and papers be destroyed along with any other material not yet turned over to the Plaintiff that was civil in nature and defendant Kohut lead the instruction on what to confiscate and or destroy inorder to meet defendant Marks instructions to keep the plaintiff out of court system for as long as they could.

Defendant Kohut is assigned to the Correctional Institution at Pittsburgh. The Baynes affidavit states that Lieutenant Smith, at Graterford, threw the typewriter. In his most recent affidavit, filed after defendant Marks had raised the timing issue in his summary judgment motion, plaintiff has attempted to explain that inconsistency. The theory he offers also explains how it was possible for defendant Kohut to destroy a typewriter already destroyed by Lieutenant Smith. He now asserts that defendant Smith partially de-

stroyed the typewriter because of his own malice and pursuant to an unwritten policy and that the destruction was completed by Kohut pursuant to the written directive issued by defendant Marks. These *post hoc* rationalizations are simply incredible and are insufficient to raise a genuine issue of fact as to defendant Marks. *Butler v. Bensinger*, 377 F.Supp. 870 (N.D.Ill.1974) (court should not pass upon the credibility of opposing affidavits unless the evidence tendered is too incredible to be accepted by reasonable minds). I will therefore grant summary judgment for defendant Marks.

■ In the original motion for summary judgment, defendants raised two legal issues which remain to be addressed. First, relying on *Hudson v. Robinson*, 678 F.2d 462 (3d Cir.1982), defendants contended that plaintiff failed to state a claim of deprivation of his First Amendment right of access to the courts because he failed to allege injury, *i.e.*, actual deprivation of access. In plaintiff's most recent complaint, however, he has alleged that the confiscation of his legal papers caused him to lose his post-conviction motion for reduction of sentence in the state court. In addition, plaintiff had previously alleged[1] that defendants' actions were in retaliation for his prior lawsuits as well as an attempt to prevent new suits from being filed. Under *Milhouse v. Carlson*, 652 F.2d 371 (3d Cir. 1981), allegations of retaliation would state a claim of deprivation of access to the courts. "The right of access to the courts must be 'adequate, effective, and meaningful,' ... and must be without hindrance or fear of retaliation." *Id.* at 374 (citation omitted). Because plaintiff's submissions raise the issue of retaliation and actual deprivation of access to the courts, I will deny defendants' motion for summary judgment on this basis.

■ Defendants have also maintained that plaintiff failed to state a claim under the due process clause because Pennsylva-

nia law provides a post-deprivation remedy for the loss of property caused by a Commonwealth party. 42 Pa.C.S.A. § 8522. Defendants base their argument on *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), which held that if there was a meaningful post-deprivation remedy for the negligent deprivation of property, due process requirements were met and no cause of action was stated under 42 U.S.C. § 1983. Whether the rationale of *Parratt* is to be extended to cases of intentional deprivations is a question which has split the circuits, but remains unresolved in this circuit. *See Palmer v. Hudson*, 697 F.2d 1220 (4th Cir. 1983); *Engblom v. Carey*, 677 F.2d 957 (2d Cir.1982); *Weiss v. Lehman*, 676 F.2d 1320 (9th Cir.1982), *cert. denied*, —— U.S. ——, 103 S.Ct. 725, 74 L.Ed.2d 951 (1983); *Madyun v. Thompson*, 657 F.2d 868 (7th Cir. 1981); *Gilday v. Boone*, 657 F.2d 1 (1st Cir.1981). Plaintiff's latest submissions have made it clear that he is alleging more than the denial of procedural due process at issue in *Parratt*. Rather, plaintiff has alleged that the destruction or confiscation of his property was in furtherance of the larger goals of denying him access to the courts and preventing him from practicing his religion. *Parratt* does not apply to the deprivation of such substantive rights. Because I find that what defendants have characterized as plaintiff's due process claim is subsumed under plaintiff's other claims, I will not unnecessarily decide the issue of *Parratt's* applicability to instances of intentional deprivation of property. I will deny defendants' motion for summary judgment.

---

1. Plaintiff's affidavit in support of the Motion to Amend the Complaint, Docket No. 16, contains several statements which may be construed as allegations of retaliation. In an affidavit in support of his Motion to Compel Discovery, Docket No. 21, plaintiff alleges a later incident which is clearly retaliatory.